475 So.2d 65 (1985)
Margie JOHNSON, Plaintiff-Appellant,
v.
TAYCO FOODS, et al., Defendants-Appellees.
No. 17090-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
Rehearing Denied September 20, 1985.
Writ Denied November 15, 1985.
*66 Ronald J. Miciotto, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Walter O. Hunter, Jr., Shreveport, for defendants-appellees.
Before MARVIN, JASPER E. JONES and FRED W. JONES, JJ.
MARVIN, Judge.
In this slip and fall action for damages, the shopper who entered a grocery store on a damp and rainy night appeals a judgment rejecting her demands.
The issues are essentially factual and concern how much water or dampness had accumulated just inside the store's entrance and for how long. Other issues concern whether the store exercised the requisite legal standard of care toward its customers. We find the conclusion of the trial court supported by the record and not clearly wrong and affirm the judgment.

FACTS
The store is open 24 hours a day. The entry door traverses a pressurized, grooved, black rubber mat which extends about three feet on each side of the door. When this device is stepped on it causes the door to automatically open. A rubber backed, rug-type mat, red in color, about 5 × 8 feet, was placed inside the entry door adjacent to the black rubber mat. This facsimile of drawings and a photograph in the record depicts how the entry door, exit door, and the mats are related:
*67 
Ms. Johnson slipped and fell at point A on the facsimile when she entered through the door and stepped off the black pressurized mat onto the tile floor. She and her son, who accompanied her, said there was a puddle of water at point A on the floor, 5-6 inches in diameter, and that the red mat was not in place on the floor when she slipped and fell. Store employees said the red mat was there and there was no puddle or water on the floor before or after she fell. Ms. Johnson said her dress was wet from the fall. Store employees denied this.
Essentially resolving the credibility argument against plaintiff, the trial court concluded the red mat was in place on the floor, there was no puddle or water, and that the only moisture or dampness was whatever remained on Ms. Johnson's shoes when she stepped off the mat. The trial court also concluded, contrary to Ms. Johnson's testimony, that there was not enough moisture present to wet her dress. Our factual review convinces us that the trial court did not err in its credibility assessments.
Store employees explained that the red mat was placed near the entry door to absorb water tracked into the store by shopping carts and by the shoes of customers. The flow of traffic entering the store was to the customer's right as shown by the oblique placement of the red mat which was changed at least daily.
Floor maintenance personnel were required to sweep the entire floor of the store with a dust broom two to three times every five or six hours, to spot mop as often as needed, and, just before ending their respective working shift, to "dry mop" the entire floor with a wrung-out mop. One maintenance person ended his shift at 9:30 p.m. or later and another came on duty between 10 and 11 p.m. Ms. Johnson entered the store and fell about 10:30 p.m. on a Sunday night. Four or five other customers were in the store at the time. The tile floor of the store was not shown to have been "slick." The maintenance personnel were specifically instructed to "keep an eye on" the front door and the mats *68 when it was raining and to mop up any water that might be tracked in.
Store employees who came to the aid of Ms. Johnson inspected the area immediately after attending to her. They testified there was no water on the floor and that the red mat was in place. One employee testified that the only dampness or moisture present was contained in the grooves of the black mat.

PLAINTIFF'S ARGUMENTS
Plaintiff's argument is based on the premise that the accumulation of tracked-in rainwater created an unreasonable hazard and that defendant did not meet its burden of showing reasonable care to protect its customer from the hazard.
The thrust of the trial court's findings, however, was that the "only moisture ... was [from] whatever remained on the lady's shoes ..." and not from accumulated tracking. The trial court recognized the danger of having "too much moisture ... inside the entrance way" but expressly concluded there was "no evidence ... that water was on the floor at all much less anything that would create an unreasonable hazard." We do not find the trial court clearly wrong in these findings.
Notwithstanding these findings, the trial court also noted, somewhat contrary to the other findings, some "dampness" in the area where plaintiff fell that "contributed in some fashion to her fall." We interpret this finding in the light of all other findings and most favorably to defendant to mean that the moisture involved was in the grooves of the black mat and remaining on plaintiff's shoes which could have contributed factually to plaintiff's fall. We agree with the trial court's observation that [on a damp and rainy night] it is "understandable that there might be some moisture at the... entrance way."

THE STORE'S DUTY
The high duty of a storeowner is twofold, first to discover unreasonably dangerous conditions, and secondly, to take reasonable steps to prevent injury resulting from the unreasonably dangerous condition. Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685, 687 (La.1984). Under the circumstances of this record, we cannot find that an unreasonably dangerous condition existed. Proof of an accident is not proof of fault. Powell v. L. Feibleman & Co., 187 So. 130 (Orl.1939); Barcia v. Estate of Keil, 413 So.2d 241 (La.App. 4th Cir.1982). A storeowner is not the insurer of the safety of its customer. Edwards v. Piggly Wiggly Operators, 401 So.2d 493 (La.App. 2d Cir.1981); Smith v. Winn Dixie Stores of Louisiana, Inc., 389 So.2d 900 (La.App. 4th Cir.1980).
The trial court effectively concluded that the defendant store had taken reasonable steps which would have led to the discovery of an unreasonable hazard and reasonable steps to prevent or protect against it, observing that "not every drop of water [on a rainy night] can be prevented ... and that the steps taken were commensurate with the risk involved."
We have recognized that a storekeeper should not be responsible for keeping his store completely dry of tracked-in rainwater. Edwards, supra, at p. 495, and concurring opinion at p. 496. On the other hand, regular, continuous mopping, may, or may not, under particular circumstances, achieve the legal standard of care. Edwards, supra; Lott v. Winn-Dixie Louisiana, Inc., 280 So.2d 659 (La.App. 4th Cir. 1973). Compare Griffin v. Winn-Dixie, Inc., 287 So.2d 651 (La.App. 4th Cir.1973). Each slip and fall case must be decided on its own circumstances. Compare cases discussed and cited in Burns v. Child's Properties, Inc., 156 So.2d 610 (La.App. 3d Cir. 1963); and Brown, supra.
In the light of this record, viewed most favorably toward upholding the judgment appealed, we conclude that plaintiff did not prove the existence of an unreasonable accumulation of either water or moisture on the floor of the defendant store.
Plaintiff further argues that the store was negligent or at fault "for not *69 warning plaintiff of the possibility" of slipping on the floor when entering the store. Fault is the basis of recovery in slip and fall cases, each of which must be determined in the light of its own circumstances. Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976). If the storekeeper has taken the affirmative protective measures designed to lead to the actual discovery of foreign substances on the floor of his store that create an unreasonably dangerous condition, his duty is only partly fulfilled. He must then take reasonable steps to prevent or protect his patrons from injury because of the condition, by mopping, sweeping, placing adequate mats, coverings, and, if necessary, by a warning commensurate with the unreasonably dangerous condition. Brown, supra; Wilson v. Wal-Mart Stores, Inc., 448 So.2d 829 (La.App. 2d Cir.1984); Edwards, supra.
We again emphasize that defendant's floor was found to be dry and that the moisture involved in plaintiff's slip and fall came from her own shoes. The black rubber mat was serving its function and obviously had trapped in its grooves rainwater tracked in the store by carts and customers. Contrary to plaintiff's assertions, the red rug mat was found to have been in place. Defendant's employees were found to have been attentive to the situation and to have dry-mopped the floor. Plaintiff was not confronted with an unreasonably dangerous condition but with only the ordinary danger that any person of mature judgment might readily discern. Plaintiff should have known that in rainy weather she might have sufficient moisture on her shoes to make her footing precarious wherever she stepped.
We do not say that in all cases a storekeeper has no duty to warn a patron of the ordinary danger created by rainwater on that patron's shoes. We hold that under the circumstances of this case, defendant's duty did not require a warning to this plaintiff to watch her step when entering the store to protect her from moisture which might remain on her own shoes. Compare Burns, supra; Edwards, supra; Wilson, supra. See also Kennedy v. Columbia Casualty Company, 174 So.2d 869 (La.App. 1st Cir.1965), affd. 248 La. 869, 182 So.2d 519 (1966). This storekeeper was not at fault simply because he failed to warn this patron of the obvious danger of her own damp or moist shoes. Crittenden v. Fidelity & Casualty Co. of New York, 83 So.2d 538 (La.App. 2d Cir.1955).
At appellant's cost, we AFFIRM.